Nov. Term,
1859.

MILLER
v.
BLACKBURN.

---

MILLER and Others *v.* BLACKBURN.

ON PETITION for a Rehearing.

Tuesday,
May 15, 1860.

WORDEN, J.—Each of the other members of the Court having delivered opinions in this cause when it was decided, it may not be improper for me now to state briefly why, in my opinion, the judgment below should be reversed, and consequently why the petition for a rehearing should be overruled.

The general facts of the case need not be here re-stated, but a portion of the complaint may be adverted to, as well as the findings of the Court in relation to the points, presenting the merits of the controversy.

Nov. Term,
1859.

MILLER
v.
BLACKBURN.

The complaint alleges that the land "was by one *Robert Miller*, former husband of the said *Amy*, purchased with the separate property of the said *Amy*, on," &c., "and in truth and in fact belonged to her in her own right; but the deed to the same was taken in the name of said *Robert Miller*, her former husband, and was by him held in trust for her." On the trial, the plaintiff obtained leave and amended the complaint by striking out the word "separate," where it occurs in the above allegation.

The Court found—

"*First.* That the money invested in the lands in controversy was invested and paid by *William Blackburn*, late guardian of *Amy Castor*, late *Amy Miller*, and was thereby held by him for her use, and received by him as her guardian, in part from the estate of her maternal grandfather, *William Kenworthy*, being a bequest to her in the last will of the said *William Kenworthy*, as one of the daughters of *Amy Blackburn*, and in part from the estate of *Isaac Kenworthy*, her uncle.

"*Second.* At the time said *William Blackburn* purchased said lands, and paid and invested said funds in the same, the said investment was made with the agreement and understanding, between the said *Robert Miller* and *William Blackburn* and *Amy Miller*, that the same was for her use and benefit, and that said deed to *Robert Miller* for the same was directed by the said *William Blackburn* to be executed by *Peter Binford*, the grantor, in pursuance of said agreement; and that the said *Robert Miller* entered into possession of said lands in pursuance of said agreement and understanding, and held the same in trust for said *Amy Miller*, his wife.

"*Third.* That the declared trust was by parol, and not in writing, but that it was made at the time and pending the negotiations for the purchase and investment, and constituted the terms upon which the investment was made."

The statute of frauds applicable to the case (R. S. 1831, p. 269), provides that "all declarations of trust or confidence, of any lands, tenements, or hereditaments, shall be manifested and proved by some writing, signed by the

party who, by law, may be enabled to declare such trust

or confidence, or by his last will in writing, or else the same shall be utterly void and of none effect." Trusts arising by implication or construction of law are excepted.

This statute does not, as I think, require the trust to be *created* in writing. It is sufficient if it be *manifested* or *proved* by writing, signed by the party enabled to declare the trust. This is believed to be the settled construction of the *English* statute, of which ours is a transcript. Hill on Trustees, 56.—Browne on Stat. of Frauds, 94, *et seq.*

Now, the finding of the Court upon this point, is, that "the declared trust was by parol, and not in writing," that is to say, it was not declared in writing. This does not necessarily imply that the trust may not have been *proven* or *manifested* in the manner prescribed by the statute. But an examination of the evidence, all of which is set out, shows that the trust was not proven by any writing signed as provided for; hence, it appears that the statute was not complied with.

That the trust set up, viewed as an express trust, is within the statute, and void unless manifested or proven as therein provided, I have no doubt. It is unnecessary here to discuss the question as to what person is enabled by law to declare the trust. In Browne on Stat. of Frauds, § 106, it is laid down that "the requisition in the statute that the writing shall be 'signed by the party who is by law enabled to declare such trusts, or by his last will in writing,' will be met by the signature by the grantor himself, if the declaration be previous to, or contemporaneous with, the act of disposition. If subsequent to it, the person legally entitled to declare the trust will be the trustee himself."

Had *Binford*, the grantor, by the consent and agreement of the parties, in making the deed to *Miller*, expressed therein that the conveyance was for the use of and in trust for said *Amy*, I see no reason why that would not have been a sufficient declaration of the trust, although it might have been a matter of entire indifference to him how the conveyance was made. Again, had *Miller*, after the con-

veyance to him, declared the trust, and manifested that declaration in the mode prescribed, I do not perceive why that would not have been sufficient. But however this may be, there must always be some person enabled to declare every express trust; and it is not material here to determine who was the proper person, as none was proven, in the mode prescribed, to have been declared by any person.

The express trust set up being void, it remains to inquire whether there was any resulting trust that can be made available.

At the threshold of this examination, we are met with a proposition laid down by *Sugden* (Sug. on Vend. and Pur., p. 417), as follows: "An express trust, although by parol only, will prevent the resulting trust; because resulting trusts are left by the statute of frauds and perjuries as they were before; and previously to the act, a bare declaration by parol would prevent any resulting trust." *Vide*, also, 1 Greenl. Cruise, tit. 12, ch. 1, § 46; 1 L. C. E., 195. This doctrine, "as a general rule," has been approved by this Court. *Irwin* v. *Ivers*, 7 Ind. R. 310. The Court say: "The appellee assumes in argument that there is a broad distinction between declared and implied trusts. The law implies a trust in the absence of one declared. Where a trust is declared, there is no room for implication, and a declared trust must be in writing. As a general rule, we concur in this doctrine," &c.

If the proposition laid down by *Sugden* is to be taken as law, in the broad and unqualified extent which would seem to be indicated by the language employed by him, it is decisive of this case, as here there was an express trust proven by parol, and any implied trust being prevented thereby, it follows that there is no trust in the case that can be enforced.

But I do not choose to stop the inquiry here, as it seems to me that, whatever may be the law in a case where the express trust is materially different from the one to be implied by law from the facts, the rule laid down may not be applicable to a case where the express trust proven by

parol is the same as the one resulting by implication, there being no antagonism between them.   To illustrate: If *A.* buy an estate with his own money, and take a deed in the name of *B.*, with a parol agreement between them that *B.* is to hold the property in trust for *A.*, I am not satisfied that the trust thus declared, would prevent the trust resulting to *A.* from the fact that the estate was purchased with his money.

As a general proposition, it may be stated that where lands are bought with the money of one person, and a deed taken in the name of another, a trust results in favor of the party whose money is thus invested.   Numerous authorities upon this point are collected in note to page 92 of Hill on Trustees, and notes to *Dyer* v. *Dyer*, 1 L. C. E. 138.

In this case, if there is any resulting trust in favor of *Amy Miller*, it is because it was her money that was invested in the purchase.

This leads to an examination of the only question in the case that presents any difficulty, viz., whose money was it that was thus invested?   This question must be tested by the law in force at the time of the transaction, which was before the recent statutes enlarging the rights of married women.   The money in the hands of the guardian of *Amy Miller* can, in no sense, as I conceive, be deemed to have been her separate property.   There is nothing in the finding of the Court, nor in the evidence, to show that it was, in any manner, limited to her separate use.   In 2 Story's Eq., § 1381, it is said that "there is no doubt that when, from the terms of the gift, settlement, or bequest, the property is expressly, or by just implication, designed to be for her separate and exclusive use (for technical words are not necessary), the intention will be fully acted upon, and the rights and interests of the wife sedulously protected in equity.   But the question that most frequently arises, is, what words are sufficiently expressive of that purpose; for the purpose must clearly appear beyond any reasonable doubt; otherwise, the husband will retain his ordinary, legal, and marital rights over it."

VOL. XIV.—6

Undoubtedly, property may be bequeathed, or otherwise conveyed, to a woman, either sole or married, for her sole and separate use, so as to prevent her husband, future or present, from claiming it by virtue of the marriage. But, as before observed, there is nothing in the present case to show that the bequest to *Amy*, or the share that she received from the estate of her uncle, was to be for her separate use. Indeed, the plaintiff, on the trial, abandoned the claim that the money was her separate property, by striking the allegation out of the complaint.

The money invested in the land, not being the separate property of the wife, became, in my opinion, the property of the husband by virtue of the marriage. It was not a mere chose in action, which, in order to make it the property of the husband, required a reduction to his actual possession. Money in the hands of a guardian is deemed in law to be in the possession of the ward, and that possession of the ward became the possession of her husband upon her marriage. This view is fully sustained by the following authorities: *Magee* v. *Toland*, 8 Port. (Ala.) 36; *McDaniel* v. *Whitman*, 16 Ala. R. 343.— *Chambers* v. *Perry*, 17 *id.* 726.

The case of *Magee* v. *Toland*, involved the right of *Toland*, the plaintiff, to a slave. The facts were that the guardian of *Jane Carnathan* was in possession of a slave belonging to *Jane*, his ward. On the 1st of *January*, 1835, the guardian hired the slave to the defendant, *Magee*, for a year. In *June* of the same year, *Jane* intermarried with *Toland*, and in *August* following she died without issue, leaving brothers and sisters. The slave was not in the actual possession of either *Toland* or his wife during the coverture. The Court say: "It appears that the slave was owned by the wife previous to, and at the time of, the marriage, and was in the possession of the defendant, as a bailee, for hire, holding under the guardian of the wife. The authority already referred to expressly states that the possession of the bailee is also that of the bailor, and it only remains to show that the possession of the guardian is also the possession of the ward. Independent

of the manifest reason that such a rule should obtain, we find no direct decision on the precise point, in relation to personal property, but the authorities are numerous and concurrent that the possession of lands by the guardian in socage, is the possession of his ward, and that no entry is required to be made by him. * * * No reason is conceived by the Court why the possession of the guardian should not be held as the possession of the ward, in relation to all personal chattels capable of possession, as it is clearly a title derived under the ward, and held solely and exclusively for his benefit. The guardian has an interest in the thing possessed, without which he would not be able to sustain an action; but such interest is consistent with, and ancillary to, the property of the ward; it never has been supposed otherwise. As the possession of the defendant below was the possession of the wife at the time when the marriage was contracted, it results that the property in the slave in question was transferred to the husband at the instant of marriage, and was then as much in his possession, in point of law, as it could afterwards have been by actual manucaption."

The case of *McDaniel* v. *Whitman* was this. A ward, having money in the hands of her guardian, married *McDaniel*, and died without anything being done to reduce the money in the guardian's hands to the actual possession of the husband. The Court say: "The only question raised by the record is—Is the husband entitled to moneys in the hands of the guardian of the wife, after her death, which he had never recovered or had in his actual possession during the existence of the coverture? According to repeated decisions of this Court, the husband is not entitled to his wife's choses in action, unless he reduce them to possession during coverture. * * * It was, however, decided by this Court, some ten years since, that the possession of personal property by the wife's guardian, must be considered the possession of the wife, and as upon the marriage of the ward, her legal existence becomes merged in that of her husband, the possession, by operation of law, is *eo instanti* transferred to

*Nov. Term,*
*1859.*

MILLER
v.
BLACKBURN.

the husband, and requires no further act on his part to vest his marital rights. *McGee* v. *Toland, supra.* True, that case involved a controversy in respect to a slave which had gone into the guardian's possession; but I can see no difference, so far as respects the application of the rule, between one description of personal property and another. The constructive possession of the husband, by virtue of which his marital rights attach, arises out of the relation in which the guardian stands towards him, as well in respect to the money which the guardian has received, as to the slave. As to both, the possession of the guardian must be regarded as the husband's possession, and upon the final settlement of the account, the husband, who has survived his wife, must be considered as the person entitled."

The same doctrine is maintained in *Chambers* v. *Perry*. " The guardian is held in this country to have only a naked authority, not coupled with an interest. His possession of the property of his ward is not such as gives him a personal interest, being only for the purpose of agency." 1 Pars. Cont., p. 114.

Undoubtedly, a legacy, or distributive share in an estate, so long as it remains unpaid by the executor to the legatee or distributee, or to some one entitled to receive it on his behalf, is a mere chose in action. But when it is received by the guardian of the legatee or distributee, it loses its character of a thing in action, for it is reduced to the possession of the ward through the person appointed by law to receive it on his behalf.

Being satisfied, as I am, that the money of *Amy*, in the hands of her guardian, became vested in her husband by virtue of the marriage, and would have gone to him had he survived her, not merely as her representative, but in virtue of his marital rights, or in case of his death leaving her surviving, would have gone to his administrator, although not reduced to his actual possession during coverture, I deem it unnecessary to inquire whether, had it been a mere chose in action, the taking possession thereof by the husband, as her trustee, and not in virtue of his mari-

tal rights, would have been such a reduction to posses- <span>Nov. Term, 1859.</span>
sion as would have made the money the husband's, and
deprived the wife of the. benefit of the implied trust <span>VAIL v. HEUSTIS.</span>
that might have arisen if the money invested were to be
deemed hers.

For these reasons, I am of opinion that there can be no
implied trust in favor of *Amy*, arising out of any supposed
investment of her money in the land, as the money in-
vested was, in law, her husband's, and not hers; and the
express trust set up being void by the statute of frauds, it
follows that the decision heretofore pronounced was cor-
rect; hence, I think the petition for a rehearing should be
overruled.

*Per Curiam.*—The petition is overruled.

Counsel the same as on the former hearing.